BRANNON, Exr., et al., Appellants,

v.

AUSTINBURG REHABILITATION AND NURSING CENTER et al., Appellees.

[Cite as *Brannon v. Austinburg Rehab. & Nursing Ctr.*, 190 Ohio App.3d 662, 2010-Ohio-5396.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2009–A–0029.

Decided Nov. 5, 2010.

664

Robert S. Wynn, for appellants.

Poling Petrello, Brant E. Poling, Colleen Healy Petrello, and James P. Meyers, for appellees Austinburg Rehabilitation and Nursing Center and Royal Manor Healthcare, Inc.

Charles L. Richards and Jason M. Toth, for appellee Ashtabula County Department of Job and Family Services.

---

MARY JANE TRAPP, Presiding Judge.

{¶ 1} Marilyn J. Brannon, executor of the estate of Lewis O. Brannon, appeals from the judgment of the Ashtabula County Court of Common Pleas, granting the summary-judgment motions of Ashtabula County Department of Job and Family Services ("ACDJFS"), Austinburg Rehabilitation and Nursing Center, and Royal Manor Healthcare, Inc. (the latter two defendants collectively referred to as "ARNC").

{¶ 2} Given the date that the claim for relief accrued, we find that the trial court improperly applied Evid.R. 601(D) and R.C. 2743.43 to what is an ordinary negligence claim against a nursing home. Thus, we reverse and remand as to Ms. Brannon's claims of negligence and violations of the patient's bill of rights against ARNC. We affirm, however, the trial court's award of summary judgment to ACDJFS, because Ms. Brannon failed to supply any evidentiary materials demonstrating that a genuine issue of material fact remains for determination as to ACDJFS's claimed reckless conduct, which would trigger an exception to its governmental immunity.

## Substantive and Procedural Facts

{¶ 3} On May 19, 2003, Mr. and Ms. Brannon filed a complaint, which was later voluntarily dismissed. On January 3, 2005, they refiled a complaint against ARNC and ACDJFS. The Brannons raised claims of negligence, loss of consortium, and violations of the Ohio Consumer Sales Protection Act ("CSPA") and the patient's bill of rights, as well as claims of fraudulent and disparaging statements made by ACDJFS against Ms. Brannon.

{¶ 4} The allegations in the complaint stem from Mr. Brannon's admission to ARNC, where he was a resident from December 30, 2000, until August 9, 2001, as well an investigation of a report of neglect or abuse relative to Mr. Brannon on December 26, 2000, conducted by ACDJFS.

{¶ 5} Mr. Brannon fell while in ARNC's care on May 18, 2001, allegedly due to ARNC's negligence. The Brannons also alleged that ARNC prevented Ms. Brannon from having access to Mr. Brannon by denying visits and phone calls

and by not sharing information, and that ARNC further violated the Brannons' rights as protected under the CSPA by failing to provide monthly itemized bills and informing them of basic rates and charges.

{¶ 6} Ms. Brannon also alleged that ACDJFS made disparaging statements about her organizational abilities and her relationship with Mr. Brannon. The Brannons were going through a divorce at the time of ACDJFS's investigation. ACDJFS had been involved in an investigation of the Brannon family situation during 2000 and 2001, and identified Mr. Brannon as a person who had suffered harm or improper care at the hands of Ms. Brannon.

{¶ 7} Numerous motions for summary judgment, motions relative to discovery, and motions seeking extensions were filed since the inception of this case. On April 18, 2005, ACDJFS filed a motion for partial summary judgment. ARNC then filed a motion for summary judgment on June 1, 2005. In the interim, Mr. Brannon passed away and the trial court granted Ms. Brannon's motion to substitute herself as executor of Mr. Brannon's estate. ACDJFS filed another motion for partial summary judgment, and ARNC filed another motion for summary judgment.

{¶ 8} On June 9, 2006, the trial court granted ACDJFS's motion for partial summary judgment, finding that it was protected by sovereign immunity pursuant to R.C. 2744.02. Accordingly, ACDJFS was dismissed from the case. On December 5, 2006, the trial court overruled ARNC's motion for summary judgment after finding that both parties had submitted expert-witness testimony on the standards of care in nursing.

{¶ 9} The parties were ordered to mediation, and ARNC shortly thereafter filed a notice of disclosure of experts, and then a notice to take the deposition of Ms. Brannon's expert, Mary Taylor, a licensed nursing-home administrator and registered nurse. ARNC filed another motion for summary judgment, which it then withdrew.

{¶ 10} ARNC next filed two motions in limine to exclude any testimony, evidence, exhibits, or inference to Ms. Brannon's claims under CSPA and the nursing-home residents' bill of rights, as well as the expert testimony of Nurse Taylor. The court granted both of ARNC's motions in limine, finding that Ms. Brannon failed to submit any evidence of violations of either CSPA or the patient's bill of rights. The court excluded any testimony of Nurse Taylor, finding that she was not competent to testify as an expert in a medical claim pursuant to the standards set out in R.C. 2743.43 and Evid.R. 601(D).

{¶ 11} Following these rulings, ARNC filed a motion for summary judgment, contending that Ms. Brannon could not establish a prima facie claim of medical

negligence, because she had not submitted any expert testimony as to the standard of care and proximate cause.

{¶ 12} The trial court awarded summary judgment to ARNC, finding that after the court excluded her expert-witness report, Ms. Brannon failed to establish by expert testimony the requisite standard of care.

{¶ 13} Ms. Brannon timely appealed, raising three assignments of error:

{¶ 14} "1. The trial court erred to the substantial prejudice of appellants when it granted summary judgment in its judgment of May 9, 2009.

{¶ 15} "2. The trial court erred to the substantial prejudice of appellants when it in its judgment of June 9, 2006 granted summary judgment.

{¶ 16} "3. The trial court erred when it granted the appellees' Motion in Limine by orders dated November 13, 2008."

### Expert Testimony on an Ordinary Negligence Claim

{¶ 17} Though disposed of by different procedural vehicles below, Ms. Brannon's first and third assignments of error concern the trial court's exclusion of her expert witness, Nurse Taylor, as well as Ms. Brannon's claim that ARNC's billing practices violated the CSPA. Because we find that the trial court erred in excluding the testimony of Ms. Brannon's expert, we reverse the trial court's judgment granting summary judgment to ARNC as to Ms. Brannon's claims of negligence and violations of the patient's bill of rights. We do not, however, reverse its judgment granting summary judgment to ARNC as to Ms. Brannon's alleged CSPA violation regarding ARNC's billing practices, because Ms. Brannon failed to provide any evidence of CSPA violations. Ms. Brannon was given the opportunity to do so upon ARNC's motion for summary judgment, which was, notably, after ARNC's motions in limine were granted.

### Exclusion of Expert Witness

{¶ 18} "A motion in limine is tentative and precautionary in nature, reflecting the court's anticipatory treatment of an evidentiary issue at trial." *Biro v. Biro,* 11th Dist. Nos. 2006–L–068 and 2006–L–236, 2007-Ohio-3191, 2007 WL 1810478, ¶ 18, quoting *State v. Williams,* 11th Dist. Nos. 2005–L–213 and 2005–L–214, 2007-Ohio-212, 2007 WL 136131, ¶ 17, citing *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 4, 573 N.E.2d 32. Thus, "[t]he denial of a motion in limine is within the sound discretion of the trial court." Id., quoting *State v. Werfel,* 11th Dist. Nos. 2002–L–101 and 2002–L–102, 2003-Ohio-6958, 2003 WL 22994981, ¶ 64, citing *In re Funk,* 11th Dist. Nos. 2002–P–0035 and 2002–P–0036, 2002-Ohio-4958, 2002 WL 31107531, ¶ 20. Accordingly, we shall not disturb a court's ruling absent an abuse of discretion. Id. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v.*

*Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8th Ed.Rev.2004) 11.

{¶ 19} The trial court granted ARNC's motion in limine based on Nurse Taylor's qualifications as an expert under the standards set forth in R.C. 2743.43 and Evid.R. 601(D). The court, however, erroneously applied these medical-malpractice-expert qualifications to an ordinary negligence claim, preventing Nurse Taylor from offering admissible opinion evidence as to the standard of care and/or proximate cause.

{¶ 20} Mr. Brannon suffered a fall at the nursing home on May 18, 2001. Suit was timely filed on May 19, 2003, voluntarily dismissed on December 31, 2003, and refiled on January 3, 2005. At all times relevant to this action, the phrase "medical claim" as defined by the General Assembly did not include an action for nursing-home negligence.

{¶ 21} The controlling statute in this case, former R.C. 2305.11(D)(3), defined "medical claim" as "any claim that is asserted in any civil action against a *physician, podiatrist, or hospital,* against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person." See also *Evans v. S. Ohio Med. Ctr.* (1995), 103 Ohio App.3d 250, 254, 659 N.E.2d 326. This statute (now found at R.C. 2305.113) has since been amended to include "residential facilities" (nursing homes) to the definition of the phrase "medical claims," and the amendment was not effective until April 7, 2005 (the effective date of Am.Sub.S.B. No. 80, 150 Ohio Laws, Part V, 7,915, 7,933).

{¶ 22} Evid.R. 601(D), which has been recognized as an exception to the general rule of competency, is limited in its application to a person offering expert testimony on the issue of liability in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by such a physician or podiatrist.

{¶ 23} Evid.R. 601(D) requires that the person testifying as an expert against a *physician, podiatrist, or hospital* be licensed to practice medicine and surgery or podiatric medicine and surgery by the licensing authority, devoting half of his or her professional time to the active clinical practice in his or her field or to its instruction. The rule further states that it does not prohibit "other medical professionals who otherwise are competent to testify under these rules from giving expert testimony on the appropriate standard of care in their own profession in any claim asserted in any civil action against a physician, podiatrist, medical professional, or hospital arising out of the diagnosis, care, or treatment of any person." Evid.R. 601(D).

{¶ 24} Although the Brannons did raise the issue of the applicability of the revised "medical claims" definition in their answer in opposition to the motion in limine, the trial court did not engage in any analysis of the retroactivity issue in either its ruling on the motion in limine or in its ruling on the last filed motion for summary judgment. Because the legislation that added "residential facilities" to the definition of "medical claims" found in R.C. 2305.113 was not effective until April 7, 2005, after the claim for relief arose and while the action was pending, the question of the amendment's retroactivity must be determined first.

### Retroactivity

{¶ 25} R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The Supreme Court of Ohio in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and its progeny, specifically addressed R.C. 1.48, and stated, "[This statute] establishes an analytical threshold which must be crossed prior to inquiry under Section 28, Article II. As we pronounced in *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339, 503 N.E.2d 753, 756, where 'there is no clear indication of retroactive application, then the statute may *only* apply to cases which arise subsequent to its enactment.'" Id. at 106. R.C. 2305.113 is silent as to retroactivity; therefore, we find that the amendment effective April 5, 2005, is inapplicable to this case.

### Expert Testimony in an Ordinary Negligence Case Against a Nursing Home

{¶ 26} How then are Evid.R. 601(D) and R.C. 2743.43 to be applied in an ordinary negligence case against a nursing home? As we succinctly stated in *Gray v. Jefferson Geriatric & Rehab. Ctr.* (1991), 76 Ohio App.3d 499, 602 N.E.2d 396, "[a]lthough Evid.R. 601(D) precludes expert testimony by a registered nurse on the liability issues in an action against a physician or hospital for medical malpractice, the rule poses no impediment to expert testimony by a registered nurse on the liability issues in an ordinary negligence [action] * * *." Id. at 504–505, citing *Morris v. Children's Hosp. Med. Ctr.* (1991), 73 Ohio App.3d 437, 443–444, 597 N.E.2d 1110.

{¶ 27} "Expert testimony is not essential to a claim in ordinary negligence, but is admissible in evidence if the witness is qualified as an expert 'by knowledge, skill, experience, training or education' and if 'scientific, technical, or other specialized knowledge' will aid the trier of fact in understanding the evidence or in determining a fact in issue." Id. at 504, citing Evid.R. 702. See also *Tabatha N.S. v. Zimmerman*, 6th Dist. No. L–06–1252, 2008-Ohio-1639, 2008 WL 901466.

{¶ 28} The Brannons' expert, Nurse Taylor, attested in her affidavit as to her qualifications as a registered nurse and licensed nursing-home administrator for the past 25 years, stating that she was qualified to render opinions in this area because she is familiar with the standards of care of her profession. She further stated that ARNC's negligence in its departure from the standards of care proximately caused harm and injury to Mr. Brannon. Attached to her affidavit was an eight-page report summarizing her review of Mr. Brannon's records and her findings.

{¶ 29} In response to ARNC's motion in limine, the Brannons submitted Nurse Taylor's curriculum vitae, which more than established her qualifications. Nurse Taylor demonstrated that she had some degree of "specialized knowledge, skill, experience, training and education" in the field in which she sought to render an expert opinion. Further, "an expert witness need only aid the trier of fact in the search for the truth and need not be the best witness on the subject." *Tabatha N.S.* at ¶ 30, quoting *Taulbee v. Dunsky,* 12th Dist. No. CA2003–03–059, 2003-Ohio-5988, 2003 WL 22532931, ¶ 16.

{¶ 30} Additionally, we must note that the court's reliance on R.C. 2743.43 was also an error. As noted in Giannelli & Snyder, Evidence (2d Ed.2001), Section 601.14, "Rule 601(D) is based on R.C. 2743.43 but is not identical. The statute is limited to actions against physicians, osteopaths, and podiatrists who have been licensed by the State Medical Board. The rule, which supersedes the statute, does not contain this limitation. In addition the time requirement for active clinical practice is different due to the 1991 amendment reducing the period [from 75 percent to 50 percent]." This observation was confirmed by the Supreme Court of Ohio in *Celmer v. Rodgers,* 114 Ohio St.3d 221, 2007-Ohio-3697, 871 N.E.2d 557, ¶ 17.

{¶ 31} Because Nurse Taylor was more than qualified to render an expert opinion in regard to Ms. Brannon's ordinary negligence claim (a negligent claim that is not against a physician, podiatrist, or hospital, but, rather, against a nursing home), we determine that the trial court abused its discretion in granting ARNC's motion in limine.

{¶ 32} The trial court began its analysis of the summary-judgment motion last filed by ARNC with the same assumption that it held when it ruled on the motion in limine excluding the opinion evidence from Nurse Taylor. That assumption was that this case presented a "medical-negligence claim" and thus the Brannons' expert witness was required to meet the heightened requirements of Evid.R. 601(D). This assumption was incorrect as a matter of law. It should also be noted that Nurse Taylor's verified expert report also provided support for

Ms. Brannon's claims of violations of the patients' bill of rights; thus, those claims should be allowed to go forward.

{¶ 33} Having determined that the trial court erred in granting ARNC's motion in limine by excluding Ms. Brannon's qualified expert and then awarding ARNC summary judgment, we reverse that judgment and remand the cause as to Ms. Brannon's claims of negligence and her claims against ARNC for violations of the patient's bill of rights.

## Sovereign Immunity of ACDJFS

{¶ 34} Lastly, Ms. Brannon contends that the trial court erred in awarding summary judgment to ACDJFS, finding it to be immune as a political subdivision from Ms. Brannon's claims of gross negligence and recklessness. The specific error complained of is that the trial court failed to hold the summary-judgment motion in abeyance while discovery was completed, as Ms. Brannon's Civ.R. 56(F) motion and affidavit requested.

{¶ 35} "Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Holik v. Richards,* 11th Dist. No. 2005–A–0006, 2006-Ohio-2644, 2006 WL 1459677, ¶ 12, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. "In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party." Id., citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id., citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

{¶ 36} The Ohio Rules of Civil Procedure contain a specific provision governing the situation in which a party cannot properly respond to a summary-judgment motion until further discovery is conducted. Thus, Civ.R. 56(F) provides:

{¶ 37} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

{¶ 38} "In interpreting Civ.R. 56(F), this court has indicated that a trial court should apply the rule liberally to ensure that the nonmoving party in any summary judgment exercise has sufficient time to discover any fact which is needed to properly rebut the argument of the moving party." *Marshall v. Silsby,* 11th Dist. No. 2004–L–094, 2005-Ohio-5609, 2005 WL 2709580, ¶ 18, citing *King v. Zell* (Dec. 31, 1998), 11th Dist. No. 97–T–0186, 1998 WL 964541, *3. The

nonmoving party's right to additional discovery time, however, is not absolute. To be entitled to a continuance under the rule, the nonmoving party has the burden of establishing a sufficient reason for the additional time. Id., citing *Kane v. Kane*, 10th Dist. No. 02–AP–933, 2003-Ohio-4021, 2003 WL 21744091, ¶ 14. "That is, the party requesting more time must show that the additional discovery will actually aid in either the demonstration or negation of a fact relevant to an issue in the motion for summary judgment." Id., citing *King* at *3–4.

{¶ 39} "[B]ecause a request for additional time under Civ.R. 56(F) involves a matter of discovery, the disposition of such a request falls within the sound discretion of a trial court." Id. at ¶ 19, citing *Wescott v. Assoc. Estates Realty Corp.*, 11th Dist. Nos. 2003–L–059 and 2003–L–060, 2004-Ohio-6183, 2004 WL 2647582, ¶ 17. "Thus, the ruling of the trial court will be upheld on appeal unless it can be shown that the decision was arbitrary, unreasonable or unconscionable." Id.

{¶ 40} ACDJFS filed its motion for partial summary judgment on April 18, 2005. The trial court gave Ms. Brannon numerous extensions of time to conduct discovery as well as extensions of time to file a brief in opposition to the motion. On December 29, 2005, Ms. Brannon filed an affidavit per Civ.R. 56(F), requesting that the pending summary-judgment motions filed by all the parties be held in abeyance while she completed discovery.

{¶ 41} More than six months later, on June 7, 2006, the trial court stated in its pretrial judgment entry that the motion for partial summary judgment, filed by ACDJFS, was ready for decision. Thus, the court implicitly overruled Ms. Brannon's Civ.R. 56(F) request. Ms. Brannon had more than six months to attempt discovery. More fundamentally though, Ms. Brannon never identified with any specificity what she was attempting to obtain from ACDJFS that she was not receiving or how the lack of information would thwart her ability to respond to ACDJFS's motion for partial summary judgment on the issue of sovereign immunity.

{¶ 42} Two days later, the trial court awarded summary judgment to ACDJFS, finding that Ms. Brannon had made claims against unnamed agents of ACDJFS who were negligent and reckless in their care of Mr. Brannon. By not naming any specific agents or employees, or any specific acts of recklessness, Ms. Brannon failed to demonstrate that an exception to ACDJFS's sovereign immunity as a political subdivision carrying out a governmental function applied.[1]

---

1. We would be remiss if we did not address and clarify the trial court's governmental-immunity analysis. Although the trial court's conclusion in awarding summary judgment to

{¶ 43} "[W]here discovery proceedings would not, if allowed to proceed, aid in the establishment or negation of facts relating to the issue to be resolved, Ohio's appellate courts have been reluctant to find that the trial court abused its discretion by granting a motion for summary judgment before the discovery proceedings were completed." *King* at *3, citing *Ball v. Hilton Hotels* (1972), 32 Ohio App.2d 293, 295, 61 O.O.2d 353, 290 N.E.2d 859; *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316.

{¶ 44} Thus, we cannot say that a substantial injustice was done when the trial court overruled yet another of Ms. Brannon's many motions for an extension of time for discovery. We affirm the trial court's award of summary judgment to ACDJFS on Ms. Brannon's claims.

{¶ 45} The judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

CANNON, J., concurs.

GRENDELL, J., concurs in part and dissents in part.

DIANE V. GRENDELL, Judge, concurring in part and dissenting in part.

{¶ 46} I agree with the majority's affirmance of the trial court's decision as to Brannon's alleged CSPA violations regarding ARNC's billing practices and claims against ACDJFS.

{¶ 47} I disagree, however, with the majority's conclusion that the trial court's exclusion of the Brannons' expert testimony and its award of summary judgment in ARNC's favor as to the Brannons' claims of negligence and violations of the patients' bill of rights constituted error. Brannon's unsupported allegations in the pleadings do not suffice to necessitate the denial of a summary judgment.

---

ACDJFS was correct because Ms. Brannon failed to supply evidentiary materials demonstrating that genuine issues of material fact remain for determination as to the claimed reckless conduct of ACDJFS, the trial court incorrectly found that Ms. Brannon claimed mere negligence. A review of the complaint reveals that Ms. Brannon actually alleged that "[t]he actions of Job and Family Services were done as part of their works tasks there, and were done in a *grossly negligen[t] manner and recklessly."* Thus, Ms. Brannon preserved the question of an exception to governmental immunity. See *Rankin v. Cuyahoga Cty. Dept. of Children & Family Serv.,* 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 37 (where the Supreme Court of Ohio defined the term "reckless" to mean that the conduct was committed knowing or having reason to know of facts that would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of physical harm to another, but also that that risk is substantially greater than that which is necessary to make his conduct negligent).

Brannon failed to present proof of the elements necessary to support a cause of action for medical negligence. Therefore, the award of summary judgment in ARNC's favor was proper.

{¶ 48} The majority maintains that Brannon's expert witness, Nurse Mary Taylor, "was more than qualified to render an expert opinion in regard to Brannon's ordinary negligence claim." However, Taylor's testimony was precluded by the trial court's ruling on a motion in limine.

{¶ 49} "It is well-settled that the court's grant of a motion in limine is merely a preliminary ruling on an evidentiary issue that is anticipated but not yet presented in its full context." *State v. Archibald*, 11th Dist. Nos. 2006–L–047 and 2006–L–207, 2007-Ohio-4966, 2007 WL 2758600, at ¶ 43; *State v. Turner*, 11th Dist. No. 2007–P–0090, 2008-Ohio-3898, 2008 WL 2955396, at ¶ 16. A motion in limine is frequently used as a precautionary request, limiting inquiry into an area until its admissibility is determined during trial. *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 309, 3 OBR 355, 444 N.E.2d 1358.

{¶ 50} According to Section 3(B)(2), Article IV of the Ohio Constitution, an appellate court can immediately review a judgment of a trial court only if it constitutes a "final order" in the action. *Germ v. Fuerst*, 11th Dist. No. 2003–L–116, 2003-Ohio-6241, 2003 WL 22764564, at ¶ 3. "As a tentative, interlocutory, precautionary ruling, ' * * * finality does not attach when the motion is granted.' [*State v. Grubb* (1986), 28 Ohio St.3d 199, 202, 28 OBR 285, 503 N.E.2d 142] ' "By its very nature, * * * its grant cannot be error. It is not a ruling on evidence. It adds a procedural step prior to the offer of evidence." ' (Citations omitted.) *State v. Maurer* (1984), 15 Ohio St.3d 239, 259, 15 OBR 379, 396, 473 N.E.2d 768, 787. As such, ' " * * * the ruling [o]n a motion in limine does not preserve the record on appeal[;] * * * an appellate court need not review the propriety of such an order unless the claimed error is preserved by [a timely objection] * * * when the issue is actually reached [during the] * * * trial." ' (Emphasis deleted and citation omitted.) *Grubb, supra*, 28 Ohio St.3d at 203, 28 OBR at 289, 503 N.E.2d at 146." *Dent v. Ford Motor Co.* (1992), 83 Ohio App.3d 283, 286, 614 N.E.2d 1074. "Ohio law is clear * * * that a ruling on a motion in limine may not be appealed and that objections to the introduction of testimony or statements of counsel must be made during the trial to preserve evidentiary rulings for appellate review." *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 34; *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, at ¶ 133; *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, at ¶ 70.

{¶ 51} In the instant case, there was no error preserved for the court to review because the trial court's ruling on the motion in limine was not a final judgment. See *Dent*, 83 Ohio App.3d at 286, 614 N.E.2d 1074 ("In the present case, finality

did not attach to the trial court's preliminary ruling to exclude Sam Bell's testimony. The issue was never reached during trial because the case never came to trial. There is no error for this court to review. We overrule Dent's second assignment of error"). The granting of summary judgment in this case ended the matter, and no trial occurred; therefore, this court has no error to review as to the motion in limine.

{¶ 52} As the court's ruling on the motion in limine excluding testimony is not reviewable by this court, we cannot consider whether Taylor's testimony was properly excluded. Accordingly, it is irrelevant whether the Brannons' claim meets the definition of "medical claim."

{¶ 53} "[A] motion in limine is designed to prevent irrelevant or inadmissible material which is potentially prejudicial from being introduced at trial. * * * It is an interlocutory device by which a party moves to limit the presentation of evidence during trial until its admissibility may be ascertained within the context of the trial. * * * The key word, as the trial court noted, is 'trial.' A motion in limine is antithetical in a summary judgment context." *Pieper v. Williams*, 6th Dist. No. L–05–1065, 2006-Ohio-1866, 2006 WL 964725, at ¶ 42. "Although the purpose of such motions is to ascertain the admissibility of evidence at trial, Civ.R. 56 governs the evidence properly considered in summary judgment motions, * * * motions in limine, and the trial court's rulings on them, play no role in determining defendants' summary judgment motions even though they may address admissibility issues the court also considers under Civ.R. 56." *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP–788, 2010-Ohio-1649, 2010 WL 1475979, at ¶ 37. Motions in limine do not merge into the final order granting summary judgment. Id. at ¶ 36.

{¶ 54} Accordingly, as Taylor's testimony was precluded by the trial court's ruling on the motion in limine, there was not any credible evidence to support any of the Brannons' claims. Thus, the trial court's decision to grant summary judgment as to all of the Brannons' claims was appropriate. I would affirm the judgment of the Ashtabula County Court of Common Pleas, granting ACDJFS, ARNC, and Royal Manor Healthcare's motions for summary judgment.